**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000715
09-APR-2025
08:07 AM
Dkt. 47 SO**

NO. CAAP-24-0000715

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF F.G.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 23-00093)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)

Mother-Appellant (**Mother**) appeals from the October 16, 2024 Orders Concerning Child Protective Act [(**CPA**)] (**Order Terminating Jurisdiction**) entered by the Family Court of the First Circuit (**Family Court**).[1]  In the Order Terminating Jurisdiction, the Family Court (a) ruled that Father-Appellee (**Father**) was able to provide the subject child (born in early 2018), F.G. (**FG** or **Child**), with a safe family home, (b) revoked Petitioner-Appellee Department of Human Services's (**DHS's**) foster custody of FG, terminated the Family Court's jurisdiction over the CPA proceeding, and (c) denied Mother's motion requesting FG be placed with Mother under family supervision. Mother also challenges Findings of Fact (**FOFs**) 91, 95, 97, 110,

---

[1]     The Honorable Jessi L.K. Hall presided.

122, 123, 125, 126, and 131 set forth in the Family Court's December 4, 2024 Findings of Fact and Conclusions of Law.

In her points of error on appeal (and argument), Mother contends that the Family Court erred and abused its discretion in the Order Terminating Jurisdiction because (a) DHS failed to provide a reasonable opportunity for Mother to reunite with Child, and (b) the Family Court failed to grant Mother's request that FG be returned to her custody under family supervision.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's points of error as follows:

On November 6, 2023, Mother was escorted by police off the premises of the Child and Family Domestic Violence Shelter because she was in possession of alcohol, heavily intoxicated, and non-compliant with police. Mother was staying at the shelter with two of her minor children, FG and H.G. (**Children**), who was almost two years old (**HG**). Shelter staff repeatedly observed Mother in possession of alcohol, neglecting the children, remaining in her bedroom while the children played or wandered outside. Shelter staff informed DHS that HG was seen in soiled diapers, dirty, and barefoot most of the time, with the five-year-old FG attempting to care for the younger sibling.

On November 13, 2023, DHS filed a petition for temporary foster custody, alleging "Mother suffers from a mental illness and that affects her ability to supervise, protect, or care for Children." The Children were previously placed in protective custody with DHS in November 2022 and May 2023.

During a DHS safety assessment of Mother on November 7, 2023, Mother reported she had not been taking her medications, and admitted regular alcohol consumption. In its Safe Family Home Report dated November 13, 2023, DHS determined the children needed temporary foster custody for their protection.

The Family Court heard the petition for temporary foster custody on November 15, 2023. Temporary foster custody of HG was revoked after the Family Court found that HG's father was willing and able to provide a safe family home without the assistance of a service plan. After previously refusing to disclose FG's father, at the November 15, 2023 hearing, Mother identified Father as FG's father; Mother contested the petition and requested a trial. The Family Court determined that continued emergency temporary foster custody for FG was necessary to protect FG from imminent harm, provided Mother with court-appointed counsel, appointed Terrance Tom as guardian ad litem (**GAL**) for FG, and set a contested hearing.

Thereafter, DHS searched for and contacted Father in Iowa, who was not aware that he was FG's alleged father. An Iowa agency completed a courtesy assessment of Father's home, and Father agreed to genetic testing.

A further hearing was held on December 11, 2023. Father appeared by Zoom, but had not yet been served or confirmed as a parent. After taking testimony, the Family Court found that Child had been harmed or threatened harm by Mother's acts or omissions. The Family Court, *inter alia*, took jurisdiction, awarded DHS foster custody over FG, and approved and ordered the November 13, 2024 service plan.

On January 8, 2024, the State of Hawaiʻi Child Support Enforcement Agency (**CSEA**) initiated a separate family court proceeding with the filing of a Petition for Parentage, which sought to establish Father as FG's natural father (the **Paternity Case**). At a February 16, 2024 hearing in the Paternity Case, genetic testing was requested by Father and ordered by the Family Court. Genetic test results were filed by CSEA on April 3, 2024, indicating a 99.99% probability that Father was FG's father. A Judgment of Paternity adjudicating Father as FG's natural father was entered on April 18, 2024. On June 21, 2024, Father filed a post-judgment motion in the Paternity Case, requesting that he be awarded the legal and physical custody of FG based on him being a non-offending parent in the CPA case, as well as his ability to provide FG with a safe family home.

In the CPA case, on June 24, 2024, Mother filed a motion for immediate review seeking custody of FG with family supervision. At a hearing in the CPA case on that date, Father submitted to the court's jurisdiction and notified the court that he was seeking custody. DHS informed the court that it was comfortable placing FG with Father and terminating the court's jurisdiction. After further input from Mother and the GAL, the Family Court allowed a two-week visit with Father, but denied DHS's request for immediate placement with Father and case closure. At a July 2024 hearing, Mother's motion for custody with family supervision was continued.

At an October 14, 2024 hearing, the Family Court called both the CPA case and the Paternity Case. A September 23, 2024 DHS Safe Family Home Report (**SFH Report**) was admitted into

4

evidence. The SFH Report stated that although Mother "has made significant effort towards addressing the concerns that necessitated removal," she "has not resolved the safety issues in the home and is unable to meet the conditions for return to implement an in-home safety plan." The SFH Report also stated Mother was "unable to demonstrate the ability to provide a safe family home based on her inability to address the safety factors that necessitated the removal."

The SFH Report further stated that (1) Father was a non-offending parent; (2) the State of Iowa completed a physical assessment of the home and background checks of adult household members, and reported no concerns; and (3) Father was willing and able to provide a safe family home without the assistance of a service plan. DHS recommended FG be placed in Father's sole physical custody. Mother argued against placement with Father. After hearing from all parties, including the GAL, the Family Court denied Mother's motion for immediate review, found that Father was a non-offending parent who could provide FG with a safe family home without the necessity of a service plan, terminated foster custody over FG, and then terminated jurisdiction in the CPA case.

In the Paternity Case, at the October 14, 2024 hearing, Father was granted temporary physical and legal custody of FG, including permission to transport FG to Father's home in Iowa. An evidentiary hearing was set for November 25, 2024, with Mother permitted daily FaceTime contact with FG in the interim. The hearing was held on November 25, 2024, and Father was awarded sole legal and physical custody. A status conference was held on

December 4, 2024, to determine and discuss visitation with Mother. Orders were entered thereafter in the Paternity Case on January 23, 2025, and January 28, 2025.

Mother timely filed her Notice of Appeal in this CPA case on October 28, 2024. No appeal was taken in the Paternity Case.

The purpose of the CPA, Hawaii Revised Statutes (**HRS**) Chapter 587A, is "to provide children with prompt and ample protection from the harms detailed herein, with an opportunity for timely reconciliation with their families if the families can provide safe family homes[.]" HRS § 587A-2 (2018). HRS § 587A-7 (2018) lists fourteen factors which a court must consider in determining whether a parent can provide a safe family home. HRS § 587A-30(b) (2018) provides in pertinent part:

> (b) At each periodic review hearing, the court shall review the status of the case to determine whether the child is receiving appropriate services and care, whether the case plan is being properly implemented, and whether the department's or authorized agency's activities are directed toward a permanent placement for the child. At the hearing, the court shall:
>
> (1) Determine whether the child is safe and enter orders:
>
> > (A) That the child be placed in foster custody if the court finds that the child's remaining in the family home is contrary to the welfare of the child and the child's parents are not willing and able to provide a safe family home for the child, even with the assistance of a service plan;
> >
> > (B) That the child be placed in family supervision if the court finds that the child's parents are willing and able to provide the child with a safe family home with the assistance of a service plan; or
> >
> > (C) <u>To terminate jurisdiction if the court finds that the child's parents are willing and able to provide the child with a safe family home without the assistance of a service plan</u>.

6

(Emphasis added).

Many of Mother's challenges to the Family Court's FOFs relate to Father's ability to provide a safe family home for FG without the assistance of a service plan. We conclude that these findings are based on substantial evidence in the record before the Family Court, and Mother's arguments in effect challenge the Family Court's weighing of that evidence, contending that more evidence should have been required. However, Mother offers no evidence of safety concerns as to Father and Mother does not challenge the many HRS § 587A-7 safe family home factors that the Family Court fully considered before ultimately determining that Father was willing and able to provide FG with a safe family home without the assistance of a service plan. Although Mother had made significant progress in addressing the issues that led to DHS's emergency foster custody of FG, Mother did not argue or provide evidence supporting that she was willing and able to provide FG with a safe family home without the assistance of a service plan.

Mother did not argue in the Family Court proceedings that she was not given a reasonable opportunity to participate in services to reunify, or that the services provided by DHS were insufficient. Therefore, we will not consider those issues for the first time on appeal. In any case, unchallenged FOFs supported the Family Court's findings in this regard. Mother's due process arguments are inconsistent with her failure to, for example, make a timely request to cross-examine a report writer or object to a report being admitted into evidence. Mother's due process rights were also protected by the Family Court's taking

of evidence prior to ruling on Mother's motion for immediate review, and by the hearing on the issue of Child's custody held in the Paternity Case.

We conclude that, based on its well-supported finding that Father was willing and able to provide FG with a safe family home without the assistance of a service plan, the Family Court properly terminated the CPA case in accordance with HRS § 587A-30(b)(1)(C).

For these reasons, the Family Court's October 16, 2024 Order Terminating Jurisdiction is affirmed.

DATED: Honolulu, Hawaiʻi, April 9, 2025.

On the briefs:

Herbert Y. Hamada,
for Mother-Appellant.

Francis T. O'Brien,
for Father-Appellee.

Kurt J. Shimamoto,
Julio C. Herrera,
Erin K.S. Torres,
Regina Anne M. Shimada,
Deputy Attorneys General,
Department of the Attorney General,
for Petitioner-Appellee,
Department of Human Services.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge